* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms, with minor modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. The carrier liable on the risk is correctly named.
4. The date of plaintiff's injury was August 29, 2002.
5. Plaintiff's average weekly wage was $503.39 yielding a compensation rate of $335.61.
6. The parties stipulate into evidence as Stipulated Exhibit # 1, Pre-Trial Agreement, as modified and initialed by the parties.
7. The parties stipulate into evidence as Stipulated Exhibit # 2, medical records.
8. The parties stipulate into evidence as Stipulated Exhibit # 3, payroll records.
9. The parties stipulate into evidence as Stipulated Exhibit # 4, unemployment records.
10. The parties stipulate into evidence as Stipulated Exhibit # 5, plaintiff's job log.
11. The parties stipulate into evidence as Stipulated Exhibit # 6, April 12, 2002, and April 22, 2002, medical notes from Dr. Pekman, M.D.
 * * * * * * * * * * *
Based upon all the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commission, plaintiff was 50 years old and a high school graduate. Plaintiff worked as a machine operator for defendant-employer.
2. On August 29, 2002, while working on the second shift, plaintiff was attempting to lift a transmission housing which weighed fifteen pounds from his left to his right up to approximately shoulder level. As he was attempting to do this task, the housing unit struck something and plaintiff felt a pop in his left shoulder. Since no one was immediately available at the time of his injury, plaintiff did not report it until the next day at the commencement of work on the second shift. The incident was reported to William Bland, a team coach at defendant-employer, and an accident report was completed at that time.
3. Although plaintiff was experiencing a great deal of pain with his shoulder, he continued working. Plaintiff's symptoms worsened progressively.
4. On September 10, 2002, plaintiff sought medical treatment from his regular attending physician, Dr. John Kessel. At that time, Roy W. Wheeler, P.A. examined plaintiff and provided him an out of work slip for the period from September 5, 2002, through September 19, 2002.
5. In spite of these events, defendants did not inform the Industrial Commission or plaintiff that his workers' compensation claim was being denied until a letter and an I.C. Form 61, dated December 9, 2002, were sent to plaintiff and the Industrial Commission.
6. On September 11, 2002, plaintiff was written-up and discharged by defendant-employer because he attempted to seek unauthorized medical treatment through workers' compensation. Defendants did not offer medical care to plaintiff and he never heard any further from defendants until he filed his workers' compensation claim.
7. On September 24, 2002, plaintiff presented to Dr. Pekman, an orthopedic surgeon, informing him that he had been injured while lifting a machine part. Dr. Pekman suggested physical therapy and oral inflammatory medication.
8. Plaintiff continued to have pain and limitations in his left shoulder and on October 21, 2002, presented to Dr. John dePerczel, an orthopedic surgeon. Plaintiff told Dr. dePerczel that he had an injury at work while trying to lift a part that got stuck and that he felt a painful pop in his left shoulder.
9. Dr. dePerczel noted that plaintiff was experiencing pain in his left shoulder and that he was having severe tenderness around the AC joint with limited flexion and abduction of the shoulder. Dr. dePerczel injected plaintiff with Cortisone and ultimately ordered an MRI.
10. On September 26, 2002, plaintiff presented to Dr. Hunt of the Unifour Pain Treatment Center in Hickory. Dr. Hunt noted that plaintiff's primary complaint was his left shoulder, which plaintiff had told Dr. Hunt he had injured at work. Dr. Hunt prescribed Oxycontin and told plaintiff to continue to follow-up with his orthopedist.
11. Plaintiff had had a previous injury to his left shoulder, which he reported to his general physician, Dr. Kessel on February 26, 2002. Plaintiff told Dr. Kessel that he was attempting to pull an engine out of a Cadillac and that the next morning he felt severe pain in his left shoulder and neck area. Dr. Kessel treated plaintiff as did Dr. William Pekman during this period and plaintiff was out of work for approximately four weeks.
12. Plaintiff returned to work during the week of April 27, 2002, and was able to perform his job without any significant difficulties.
13. Plaintiff sought the care of Dr. Hunt again on June 17, 2002, and Dr. Hunt noted that the left shoulder had improved, plaintiff was feeling better but that plaintiff was having persistent right shoulder pain. Plaintiff did not report any further injuries or difficulties with his left shoulder until his accident on August 29, 2002.
14. Dr. de Perczel became the regular treating physician for plaintiff on October 21, 2002. He noted that plaintiff was having severe problems and injected Cortisone into plaintiff's left shoulder. Plaintiff continued his treatment with Dr. de Perczel until January 7, 2003.
15. Plaintiff had two MRI's: one on April 17, 2002, before the accident at work and another on October 29, 2002, after the accident. The same radiologist, Dr. Thorwarth, reviewed the MRI's taken on those dates and noted that there were abnormal signals in the second exam that were not present in the first exam. He opined that these abnormal signals were tendonosis. Dr. Thorwarth noted that this could be the reaction of the tendon to minor injuries and that he would defer any clinical significance to plaintiff's orthopedic surgeon.
16. Dr. dePerczel opined that the findings noted on the two MRI's were significant. Specifically, he testified that the tendonosis, which was shown by the second MRI was compatible with plaintiff's work-related injury on August 29, 2002, and therefore, was a probable cause for that particular finding on the MRI.
17. Dr. dePerczel opined that plaintiff's left shoulder injury was caused or aggravated by his August 29, 2002, work injury.
18. Plaintiff last presented to Dr. dePerczel on January 7, 2003, at which time Dr. de Perczel found plaintiff to be at maximum medical improvement and released him to return to his regular job. As of January 7, 2003, plaintiff showed no signs of left shoulder impingement and was having no pain. Dr. dePerczel opined that plaintiff did not have any permanent partial disability that he could attribute to plaintiff's left shoulder as a result of his August 29, 2002, work injury. Dr. dePerczel discharged plaintiff and made no further recommendations for medical treatment.
19. There is no evidence to indicate that plaintiff has been taken out of work or given any work restrictions related to his August 29, 2002, injury following the date Dr. dePerczel released him to return to work, January 7, 2003.
20. Defendants failed to timely file an Industrial Commission Form 61 pursuant to N.C. Gen. Stat. § 97-18(c) and Rules 601 and 802(2) of the Workers' Compensation Rules of the North Carolina Industrial Commission.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission finds the following:
 CONCLUSIONS OF LAW
1. As a direct result of the work assigned to plaintiff, on August 29, 2002, plaintiff sustained an injury by accident arising out of and in the course of his employment, which resulted in injury to his left shoulder. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's compensable injury to his left shoulder, plaintiff is entitled to temporary total disability compensation at the rate of $335.61 per week from September 5, 2002, until January 7, 2003, when his treating physician, Dr. dePerczel, released him to regular duty work. N.C. Gen. Stat. § 97-29.
3. As plaintiff has reached maximum medical improvement with no permanent partial disability rating given to his left shoulder, he is not entitled to any benefits under N.C. Gen. Stat. § 97-31.
4. As a result of plaintiff's compensable injury by accident, the plaintiff is entitled to have the defendants pay for all medical expenses for treatment for plaintiff's left shoulder injury sustained in the accident of August 29, 2002, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 * * * * * * * * * * *
Based upon on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay compensation to plaintiff for his temporary total disability at the rate of $335.61 per week from September 5, 2002, until January 7, 2003, when his treating physician, Dr. dePerczel, released him to regular duty work. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter approved.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff for treatment of his left shoulder injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due under Paragraph 1 of this Award is hereby approved and shall be deducted by defendants from compensation that has accrued and paid directly to plaintiff's counsel.
4. Defendants are fined $300.00 for their failure to timely file an Industrial Commission Form 61 pursuant to Rule 802(2) of the Workers' Compensation Rules of the Industrial Commission.
5. Defendants shall pay the costs.
 S/_________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_________________ BUCK LATTIMORE CHAIRMAN
 S/_________________ CHRISTOPHER SCOTT COMMISSIONER